DECISION AND JUDGMENT ENTRY
This is an appeal from an ongoing case involving the adoption of a child, Lindsey Ann B.(d.o.b. March 14, 1993), by her step-mother, appellee, Susan B. In the current appeal, appellant, Michelle Lynn W., Lindsey's natural mother, alleges error in the trial court's determination that the adoption of Lindsey by her step-mother was in Lindsey's best interests. For the reasons stated herein, this court affirms the judgment of the trial court.
The facts relevant to this appeal were fully set forth in In the Matterof: Lindsey Ann B. (Sept. 29, 2000), Lucas App. No. L-00-1132, unreported, and will not be repeated here. In that appeal, this court found that the trial court's judgment that the consent of appellant, Michelle Lynn W., Lindsey's natural mother, was not required for Lindsey's adoption was supported by clear and convincing evidence. The trial court based its decision on appellant's failure to communicate with Lindsey for a period of at least one year preceding the filing of the petition for adoption.
On February 5, 2001, the trial court conducted a hearing on appellee's adoption petition to determine the best interest of the child. Helen D. Russell, a social worker, testified as to her findings contained within the Step-Parent/Adoption Homestudy Report she previously filed with the trial court. In her report, she described appellee as pleasant and cooperative. Russell found the home to be attractively furnished and well-maintained. Lindsey was described as a happy and lovable little girl who was involved in many activities. At the hearing, Russell testified that Lindsey appeared to be well bonded with appellee; Russell testified that Lindsey felt appellee was her "Mom." Russell acknowledged that she did not contact appellant before submitting her assessment. Russell also testified that appellee was doing a very good job parenting Lindsey. Russell recommended that the petition for adoption be granted.
Appellee testified as to her willingness to raise Lindsey and the lack of any effort by appellant's family to contact or see Lindsey. Appellee testified that, although Lindsey had some problems that required tutoring upon transfer to a private school from a public school, she is now doing well in school. Appellee also testified that Lindsey participates in numerous activities at school and that the family attends church. Appellee testified that Lindsey is well-adjusted and has a number of friends.
Roy, Lindsey's father and appellee's husband, Roy's parents and several friends all testified as to appellee's close and loving relationship with Lindsey. All testified that it would be in Lindsey's best interest to be adopted by appellee.
Appellant did not attend the hearing.
On February 6, 2001, the trial court issued its decision concluding that her adoption by her stepmother was in Lindsey's best interest. From this judgment, appellant filed a timely notice of appeal and now asserts the following assignment of error:
 "THE TRIAL COURT'S FINDING THAT THE FINALIZATION OF THE WRITTEN ADOPTION WAS IN THE BEST INTEREST OF LINDSEY IS NOT SUPPORTED BY AND IN FACT IS CONTRARY TO THE EVIDENCE THAT WAS PRESENTED, AND THUS SAID FINDING SHOULD BE REVERSED."
This court finds no merit in this assignment of error.
An adoption proceeding involves a two-step process consisting of a "consent" phase and a "best interest" phase. In re Adoption of Jordan
(1991), 72 Ohio App.3d 638, 645. Previously, the trial court determined by clear and convincing evidence that appellant failed to communicate with Lindsey for the one-year period immediately preceding the filing of appellee's adoption petition. This determination was upheld on appeal. Following the first appeal, the trial court turned to the second phase of the adoption process, the "best interest" phase.
Adoption matters are decided on a case-by-case basis through the exercise of the discretion granted a trial court to determine matters such as the best interest of the child. In re Adoption of Charles B
(1990), 50 Ohio St.3d 88, 90. Moreover, it is primarily the responsibility of the trial court to weigh the testimony presented before it and determine the credibility of the witnesses. Bechtol v. Bechtol
(1990), 49 Ohio St.3d 21, 23. While adoption has the effect of terminating a natural parent's rights, see R.C. 3107.15(A) (1), such is not the purpose of an adoption. The primary purpose of an adoption proceeding is to find a child a stable and loving home. In re Adoption ofKohorst (1992), 75 Ohio App.3d 813, 817.
The factors for determining the best interest of the minor child in an adoption are set forth in R.C. 3107.16.1(B).[1] R.C. 3107.161(C) places the burden upon the party objecting to provide the trial court with evidence necessary for a determination of the best interest of the child. What is in the best interest of the child is a legal determination that must be made by the trial court, after consideration of all the requisite factors as provided in R.C. 3107.161. In determining whether to grant or deny an adoption, a trial court must consider "`(1) whether the petitioner is suitably qualified to care for and rear the child, and (2) whether the best interests of the child will be promoted by the adoption.' (Citation omitted.)" In re Adoption of Ridenour (1991),61 Ohio St.3d 319, 320. The trial court's primary consideration, however, is the best interests of the child. Charles B,50 Ohio St.3d at 90. ("The polestar by which courts in Ohio * * * have been guided is the best interest of the child to be adopted.").
Given the considerable discretion enjoyed by the trial court in determining whether an adoption is in the best interest of the child, R.C. 3107.14(C); Charles B, 50 Ohio St.3d at 94, absent an abuse of discretion, a reviewing court may not reverse a trial court's decision. An abuse of discretion implies more than an error of law or of judgment. Rather, an abuse of discretion suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. Furthermore, an appellate court should not substitute its judgment for that of the trial court when competent, credible evidence supports the trial court's decision. In reAdoption of Deems (1993), 91 Ohio App.3d 552, 558. In Davis v.Flickinger (1997), 77 Ohio St.3d 415, 420, the court stated:
 "`It is the role of a trial judge at a custody hearing to consider all relevant factors, and then reach a decision. That decision is based primarily on the best interests of the child, with all other concerns of secondary importance. Because the trial judge is in the best position to evaluate the child's best interests, a reviewing court should accord great deference to the decision of the trial judge. * * *.' (Emphasis sic.) (Citation omitted.)"
In the case at bar, we find no abuse of discretion in the trial court's decision that the adoption would be in Lindsey's best interest. As the court stated in In re Adoption of Zschach (1996), 75 Ohio St.3d 648,651: "Ultimately, the goal of adoption statutes is to protect the best interests of children." In In re Cunningham (1979), 59 Ohio St.2d 100,106, the court emphasized that parental rights "`are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.' (Citation omitted.)"
In the case sub judice, our review of the record reveals that ample, competent and credible evidence supports the trial court's conclusion that adoption would be in the child's best interests. The evidence demonstrated that appellees provided Lindsey with a loving, stable home. In particular, the evidence adduced at the hearing established that appellee has lived with Lindsey and has cared for her since she was approximately three years old. Several witnesses also testified that appellee is a caring and loving mother. As noted by the court below, appellee is the mother Lindsey has known since she was approximately three years old. Other evidence introduced at the hearing indicates that appellee has a close and loving relationship with Lindsey. Our standard of review in adoption cases is extremely deferential, and we may not substitute our judgment for that of the trial court. See, Flickinger,supra; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77.
At the conclusion of the "best interest" hearing, the trial court specifically indicated that it considered all eleven factors enumerated in R.C. 3107.161(B) in assessing the best interest of the child. In addition, R.C. 3107.161 does not limit the trial court to the factors enumerated therein, but requires consideration of all relevant factors. R.C. 3107.161(B). As noted by the trial court at the conclusion of the "best interest" hearing, adoption proceedings, by their very nature, present difficult issues. The trial court's decision permanently changes the child's life. The foregoing concerns, however, demonstrate the rationale underlying our deferential standard of review. Based upon the record before us, we cannot find that the trial court abused its discretion in determining that appellee's adoption of Lindsey was in Lindsey's best interest.
Accordingly, appellant's single assignment of error is found not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Probate Division, is affirmed. Appellant is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J.
Melvin L. Resnick, J. and James R. Sherck, J. CONCUR.
[1] R.C. 3107.16.1 provides:
 "(A) As used in this section, "the least detrimental available alternative" means the alternative that would have the least long-term negative impact on the child.
 "(B) When a court makes a determination in a contested adoption concerning the best interest of a child, the court shall consider all relevant factors including, but not limited to, all of the following:
 "(1) The least detrimental available alternative for safeguarding the child's growth and development;
 "(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;
 "(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;
 "(4) The duration of the separation of the child from a parent;
 "(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;
 "(6) The likelihood of safe reunification with a parent within a reasonable period of time;
 "(7) The importance of providing permanency, stability, and continuity of relationships for the child;
 "(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 "(9) The child's adjustment to the child's current home, school, and community;
 "(10) The mental and physical health of all persons involved in the situation;
 "(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected; whether the person, in a case in which a child has been adjudicated to be an abused or neglected child, has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether the person has been convicted of, pleaded guilty to, or accused of a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the person's family or household; and whether the person has been convicted of, pleaded guilty to, or accused of any offense involving a victim who at the time of the commission of the offense was a member of the person's family or household and caused physical harm to the victim in the commission of the offense.
 "(C) A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative."